UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| GISELLA GUTIERREZ, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 1:17-cv-111 |
| | § | |
| REX W. TILLERSON, et al., | § | |
| Defendants. | § | |

**MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION**

The Court is in receipt of Defendants' "Motion to Dismiss for Lack of Subject-Matter Jurisdiction and Failure to State a Claim" (hereinafter, the "Motion"). Dkt. No. 10. Plaintiff filed her response in opposition on September 11, 2017. Dkt. No. 18. For the reasons stated below, it is recommended that Defendants' Motion be **GRANTED.**

### I. Background and Procedural History

Plaintiff has a Texas birth certificate which states that she was born in Laguna Heights, Texas, on March 20, 1990, with the assistance of a midwife, Isidora King ("King)". Dkt. No. 7 at 2. The birth certificate is signed by King as the informant and attendant at birth. *Id.* Plaintiff also has a Mexican birth certificate which states that her place of birth was Matamoros, Tamaulipas, Mexico. Dkt. No. 7 at 15. According to Plaintiff, her parents obtained the Mexican birth certificate so that she could attend Mexican schools. Dkt. No. 1 at 3. In 1995, King swore an

affidavit that she had not, in fact, been present at Plaintiff's birth, and that she had fraudulently signed Plaintiff's Texas birth certificate.[1] Dkt. No. 7 at 50-51.

Plaintiff was issued a United States passport in 2010. Dkt. No. 1 at 3; Dkt. No.7 at 25. In 2011, Plaintiff requested a copy of her Texas birth certificate from the Texas Department of Health & Human Services ("TDHHS"), but her request was denied. Dkt. No. 1 at 3-4. TDHHS sent Plaintiff a letter explaining that it refused to issue the birth record because the vital statistics office had obtained King's sworn statement that she was not present at Plaintiff's birth. Dkt. No. 7 at 27. The letter also informed Plaintiff that she was entitled to a hearing before an examiner at the TDHHS. *Id.* After a hearing, on September 24, 2012, the department concluded "that the State Registrar should **NOT** issue a certified copy of the birth certificate," because Plaintiff did not rebut conflicting information received by the State Registrar concerning the birth certificate. *Id.* at 68 (emphasis in original).

On October 16, 2013, Plaintiff's counsel contacted the Social Security Administration ("SSA") office in Brownsville, Texas, to request a copy of Plaintiff's Social Security card. Dkt. No. 7 at 74-75. Counsel asked that "[i]f for any reason, your agency can not issue a copy of her social security I would like to request that you let her know why you can not issue her social security so that we can proceed accordingly. For example, that you can not issue her a social security because there

---

[1] Plaintiff states that King, while on her deathbed in 2015, made another sworn statement in which she retracted the 1995 affidavit and affirmed that she had been present at Plaintiff's birth. According to Plaintiff, this statement was made in the presence of counsel for the U.S. State Department. Dkt. No. 1 at 7-8.

is an allegation in your system that she was not born in Texas." *Id.* at 74. On October 28, 2013, the SSA notified Plaintiff, "We cannot issue you a Social Security card at this time because: The Texas state level BVS Birth Records Department has flagged this birth Certificate as not acceptable." *Id.* at 76. The SSA qualified that its letter to Plaintiff was "not notice of proof of ineligibility for an Social Security number or card," and provided Plaintiff with information on how to request further SSA review of her application. *Id.*

In 2015, Plaintiff completed a Form I-130 ("Petition for Alien Relative") petitioning for a visa for her father, Miguel Angel Gutierrez Juarez, to immigrate to the United States. Dkt. Nos. 1 at 4; 7 at 83. Plaintiff received confirmation that the National Visa Center had received the petition on May 19, 2015, with the notation that the center would work with Plaintiff to complete her father's visa case and schedule an interview. *Id.* at 82. Plaintiff's father was contacted by the U.S. Department of State ("State Department") on October 7, 2015, scheduling an interview the following month at the U.S. Consulate in Ciudad Juarez, Mexico. *Id.* at 81. Plaintiff alleges that both her parents were subsequently interviewed at the U.S. Consulate, and "were told that since [Plaintiff] was born with a midwife, [officials] needed to question them about their daughter's birth." Dkt. No. 1 at 5. As far as the pleadings before the Court have indicated, the visa petition for Plaintiff's father remains pending.

On November 16, 2016, the State Department informed Plaintiff that it had revoked her passport. Dkt. No. 7 at 85-86. According to the State Department,

officials conducted an investigation which revealed Plaintiff's Mexican birth certificate and King's 1995 sworn statement that she was not present at Plaintiff's birth. *Id.* at 85. The State Department noted that Plaintiff was not entitled to a hearing, pursuant to the passport regulations barring hearings after determination of non-citizenship, but that she could pursue an action in federal court under 8 U.S.C. § 1503. *Id.* at 86.

On May 21, 2017, Plaintiff filed a Complaint seeking: (1) a declaratory judgment of her citizenship, stemming from the revocation of her passport, the SSA's decision to not issue a Social Security card, and the State Department's refusal to issue visas to her parents; (2) a permanent injunction to enjoin Secretary of State Rex W. Tillerson ("Secretary Tillerson") from denying a passport to Plaintiff in the future; (3) a permanent injunction to enjoin Secretary Tillerson "from not resuming consideration of the applications of Plaintiff's parents for immigrant visas" and from not issuing the visas absent an independent basis for ineligibility; and (4) a permanent injunction to enjoin Social Security Acting Commissioner Nancy A. Berryhill ("Commissioner Berryhill") from declining to create a Social Security record for Plaintiff or issue a Social Security card. Dkt. No. 1 at 9-12. Defendants filed the instant Motion on July 31, 2017, invoking both Federal Rule of Civil Procedure 12(b)(1), dismissal for lack of subject matter jurisdiction, and Federal Rule of Civil Procedure 12(b)(6), dismissal for failure to state a claim. Dkt. No. 10. Defendants argue that the majority of Plaintiff's claims should be dismissed, but concede that Plaintiff has stated a claim under Section 1503(a) solely

on the basis of her passport revocation. *Id.* at 7, 18.

## II. Legal Standards

**FED. R. CIV. P. 12(b)(1)**. A party may move for a court to dismiss a plaintiff's cause of action on the basis that the court lacks subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). Unlike motions to dismiss under Rule 12(b)(6), where the plaintiff's allegations are taken as true and viewed under the most favorable light, the plaintiff bears the burden of proof that jurisdiction exists under Rule 12(b)(1). *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) ("The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction."); *Ambraco Inc. v. Bossclip B V*, 570 F.3d 233, 238 (5th Cir. 2009). Further, courts must consider a jurisdictional attack under Rule 12(b)(1) prior to considering other grounds for dismissal. *Ramming*, 281 F.3d at 161 (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (Where "a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits.")). In considering whether it has subject matter jurisdiction, a court may consider matters of fact that are either in dispute or outside the pleadings. *Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986); *Ambraco*, 570 F.3d at 238 (noting that both 12(b)(1) and (b)(3) allow courts to look past the pleadings to resolve disputed facts). "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in

support of his claim that would entitle plaintiff to relief." *Ramming*, 281 F.3d at 161. "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)).

**FED. R. CIV. P. 12(b)(6)**. Rule 12(b)(6) provides for dismissal of a cause of action based on the plaintiff's failure to state a claim upon which relief could be granted. FED. R. CIV. P. 12(b)(6). "Under Rule 12(b)(6), a claim should not be dismissed unless the court determines that it is beyond doubt that the plaintiff cannot prove a plausible set of facts that support the claim and would justify relief." *Lane v. Halliburton,* 529 F.3d 548, 557 (5th Cir. 2008). All well-pleaded facts will be taken as true and viewed in the light most favorable to the plaintiff. *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010). But any allegations in the complaint which are conclusory will not be afforded a presumption of truth. *Johnson v. E. Baton Rouge Fed'n of Teachers*, No. 17-30175, 2017 WL 3772887, at *1 (5th Cir. Aug. 30, 2017) (per curiam). Therefore, a complaint must contain sufficient factual matter that states a claim to relief that is "'plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted). Legal conclusions that are "naked assertions devoid of further factual enhancement" or mere "formulaic recitation of [a claim's] elements" are not enough. *Id.* Instead, factual allegations are facially plausible when they allow a court to draw a

reasonable inference that the defendant is liable for the alleged misconduct.  *Id.*  Finally, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable and 'that a recovery is very remote and unlikely.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  The "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* at 555-56 (citations omitted).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting FED. R. CIV. P. 8(a)(2)) (internal citations omitted).

### III. Discussion

#### a. Plaintiff's Claims under Section 1503(a)

Section 1503(a) of title 8 of the United States Code provides that

> If any person who is within the United States claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States, such person may institute an action . . . against the head of such department or independent agency for a judgment declaring him to be a national of the United States[.]"

8 U.S.C. § 1503(a).  Section 1503(a) continues, stating "[a]n action under this subsection may be instituted only within five years after the final administrative denial of such right or privilege and shall be filed in the district court of the United

States for the district in which such person resides or claims a residence, and jurisdiction over such officials in such cases is hereby conferred upon those courts." *Id.* Plaintiff contends that Section 1503(a) entitles her to a declaratory judgement of citizenship based on the revocation of her passport by the State Department, the refusal of the SSA to issue her a Social Security card, and the refusal of the State Department to issue immigrant visas to her parents. Dkt. No. 1 at 9-10. Defendants acknowledge that Plaintiff has stated a claim under Section 1503 for her passport revocation, but challenge the remainder of Plaintiff's claims. Dkt. No. 10 at 6-7.

### *1. Plaintiff's Social Security Card Application*

Defendants assert that Plaintiff fails to state a claim against Commissioner Berryhill under Section 1503(a), and that Commissioner Berryhill should be dismissed as a defendant from this action. Dkt. No. 10 at 10. Plaintiff maintains that the SSA's actions, in declining to issue her a Social Security card upon request, give rise to a Section 1503(a) claim. Dkt. No. 18 at 10. The letter Plaintiff received from the SSA reads as follows:

> We cannot issue you a Social Security card at this time because: The Texas State level BVS Birth Records Department has flagged this birth Certificate as not acceptable. In order to process another Application for a Social Security Number, you need to contact the State BVS Office . . . . Please contact us when: You can give us the document(s) we need. **This notice is not proof of ineligibility for an Social Security number or card** . . . . If you think you should get a Social Security number or card based on what you have given us, you can ask us to review your case. Someone who did not look at your first application will review it. To ask for a review, please call, write or visit the Social Security office at the address shown at the top of this letter.

Dkt. No. 7 at 76 (emphasis in original). Defendants urge that the SSA's explanation for denying the request for Social Security card was not a denial of a right "upon the ground that [Plaintiff] is not a national of the United States." Dkt. No. 10 at 11. For example, Defendants assert, the SSA was also precluded from issuing the Social Security card because, without a valid birth certificate, the agency lacked information to prove Plaintiff's age. *Id.* Plaintiff argues that this assertion is "sophistry"—that to construe the letter as a denial based on citizenship is a "reasonable interpretation" of the SSA's decision not to issue a Social Security card, since the State of Texas had flagged her birth certificate after discovering her Mexican birth certificate and the affidavit from King that she was not present at Plaintiff's birth. Dkt. No. 18 at 10. Alternatively, Plaintiff asks to be allowed to amend her complaint, to state that "on information and belief," she alleges that the basis of the SSA's refusal was her citizenship. *Id.* at 11.

Courts have previously noted the denial of a Social Security card could give rise to a Section 1503(a) claim. *See S.T. ex rel. Trivedi v. Napolitano, et al.*, No. H–12–285, 2012 WL 6048222 (S.D. Tex. Dec. 5, 2015) ("The denial of his social security card was sufficient for S.T. to seek a judicial determination of his citizenship[.]"); *Messenger v. Rice*, No. CV-05-0053-EFS, 2006 WL 276933 (E.D. Wa. 2006) ("A denial of a right or privilege under § 1503(a) requires an affirmative act that prevents a person from enjoying some aspect of United States nationality. Examples of such acts include the denial of a passport, a social security card, and the right to vote."). However, the government action which gives rise to a Section

1503(a) claim must be a deprivation of a right or privilege based "upon the ground that [the plaintiff] is not a national of the United States[.]" 8 U.S.C. § 1503(a). Where "no department, agency, or official thereof [has] denied plaintiff's claim that she is a United States citizen . . . . there is no basis for a declaratory action under subsection 1503(a)." *Said v. Eddy*, 87 F. Supp. 2d 937, 940 (D. Alaska 2000).

Here, the SSA never denied Plaintiff's claim that she is a United States citizen, and did not rely on her citizenship status as its reason for declining to issue a Social Security card. Instead, the SSA cited the flag associated with Plaintiff's birth certificate. Dkt. No. 7 at 76. Applicants need not prove that they are citizens in order to obtain a Social Security card—but they must provide the SSA with "convincing evidence of . . . age, U.S. citizenship or alien status, and true identity," which Plaintiff was unable to do because the BVS had flagged her birth certificate. 20 C.F.R. § 422.107(a), (e). Pursuant to federal regulations, the SSA may not issue Social Security cards where, as here, the personal information submitted by an applicant cannot be verified. 20 C.F.R. § 422.107 (g) ("We will not issue an original or replacement Social Security number card . . . when we are unable to verify the required evidence[.]"). While the SSA indicated that it knew Plaintiff's birth certificate had been flagged, there are no facts to suggest the SSA knew why the certificate had been flagged other than that it was "not acceptable" to the State of Texas—nor are there facts to suggest that its decision was based on Plaintiff's citizenship. *Id*. As Defendants emphasize, a flag on a birth certificate could lead the SSA to decline to issue a card for a number of reasons, including an inability to

verify age. *See, e.g., Martinez v. Berryhill*, No. 1:16-cv-00143, 2017 WL 3704821, at *1 (S.D. Tex. Aug. 28, 2017). Further, because the SSA was aware that Plaintiff had a valid, unexpired U.S. passport at the time of her application, it had no specific basis for inferring that the flag on her birth certificate was connected with her citizenship. Dkt. No. 1 at 5. In sum, Plaintiff's complaint lacks factual allegations that the SSA denied her a privilege based on the ground that she was not a national of the United States, and the Court is unable to "infer more than the mere possibility of misconduct."[2] *Iqbal*, 556 U.S. at 679.

In her response to Defendants' Motion, Plaintiff requests, as an alternative measure, that she "be allowed to amend her complaint, to state more specifically that on information and belief, she alleges that [citizenship] was the basis of the refusal of the SSA to issue her a Social Security card." Dkt. No. 18 at 11. Federal Rule of Civil Procedure 15(a)(1)(B) permits plaintiffs to amend a complaint as a matter of course once within 21 days of service of a motion under Rule 12(b)." FED. R. CIV. P. 15(a)(1)(B). However, a plaintiff may not amend her complaint through argument in a brief opposing dismissal of her claims. *Doty v. Sun Life Assur. Co.*, No. H-07-3782, 2009 WL 3046956 *16 (S.D. Tex. Aug. 31, 2009), *adopted* 2009 WL 3046952 (S.D. Tex. Sept. 23, 2009). A court may also deny a request for leave to

---

[2] The Court recognizes that another court in the Southern District of Texas, in *S.T. ex rel. Trivedi v. Napolitano, et al.*, permitted a plaintiff to proceed with a claim under Section 1503(a) for denial of a Social Security card. No. H–12–285, 2012 WL 6048222 (S.D. Tex. Dec. 5, 2015). However, in that case, the defendants never argued that the plaintiff failed to state a claim on that issue, conceding, "'Plaintiff has alleged an 8 U.S.C. § 1503 cause of action against Defendant [Social Security Commissioner] Astrue only." Accordingly, the court need not have considered, in the 12(b)(6) context, whether the plaintiff had stated a claim for the denial of his Social Security card on the basis of citizenship. *Id.* Further, Trivedi did not present the SSA with his passport, as Plaintiff did, bolstering a possible finding that the SSA deprived him of a right based on citizenship.

amend if the proposed amendment would be futile. *Alonso v. Kerry*, No. 1:16-cv-0199, 2017 WL 519280, at *4 (S.D. Tex. Feb. 7, 2017). "An amendment is futile if it fails to state a claim upon which relief could be granted." *Id.* Even if Plaintiff were permitted to amend her complaint, her new contention—"that on information and belief," citizenship was the basis of the SSA's decision—would not create new plausible allegations which could allow her claim to survive dismissal. For these reasons, Plaintiff's request to amend her complaint is **DENIED**. The Court recommends dismissal of Plaintiff's claim against Commissioner Berryhill pursuant to Federal Rule of Civil Procedure 12(b)(6), and the dismissal of Commissioner Berryhill as a defendant in this action.

### 2. *Plaintiff's Form I-130 Petition*

Plaintiff also alleges that the State Department's refusal to approve her parents' immigrant visas gives rise to a claim under Section 1503(a). Dkt. No. 1 at 9-10. Defendants maintain that Plaintiff fails to state a claim on this issue because there is no constitutional right for a citizen to have non-citizen parents live with them in the United States, and the only privilege Plaintiff would be entitled to as a citizen in this context is a statutory right to petition for her parent's visa, which she was able to successfully do in this case. Dkt. No. 10 at 13-14. The Court agrees with Defendants.

Any citizen of the United States "may file a Form I-130 petition on behalf of an alien relative who wishes to immigrate to the United States." *Richardson, et al. v. Kerry*, No. H-14-0742, 2014 WL 4385995, at *3 (S.D. Tex. Sept. 4, 2014); *see* 8

U.S.C. § 1154 (a)(1)(A)(i) (outlining the process for petitioning a non-citizen family member to immigrate). But "[s]ubmitting a Form I-130 does not alone allow an alien to be admitted into or stay in the United States." *Richardson,* 2014 WL 4385995 at *3. Further, relief under Section 1503(a) is only available after the "final administrative denial" of a "right" or "privilege" owed to a national of the United States. *Park Hurtado v. Napolitano*, No. 1:12-cv-52, 2013 WL 12155581, at *1 (S.D. Tex. July 10, 2013).

Here, Plaintiff submitted the Form I-130 which initiated her father's process for immigrating to the United States. Dkt. No. 7 at 83. According to Plaintiff, her parents were then interviewed at the U.S. Consulate in Ciudad Juarez, Mexico, and questioned about the circumstances of her birth. Dkt. No. 1 at 5. Plaintiff does not allege that Defendants prevented her from submitting the Form I-130, or even that the Form I-130 was denied. Because Plaintiff has not submitted factual allegations showing that she was denied a right or privilege of a national of the United States based on the ground that she is not a citizen, her claim should be dismissed.

Plaintiff relies on the United States Supreme Court's holding in *Moore v. City of East Cleveland*, that "freedom of personal choice in matters of marriage and family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment." *Moore v. City of E. Cleveland*, 431 U.S. 494, 499 (1977). In *Moore*, the Supreme Court examined a city ordinance which limited occupancy of a dwelling unit to members of a single family, and concluded that the ordinance deprived a resident of a liberty interest. *Id.* at 506. Plaintiff argues that

Defendants' delay in approving her parents' visas similarly deprives her of a liberty interest in the freedom of personal choice in her family life. Dkt. No. 18 at 9-10. However, the liberty interest described by the Supreme Court does not extend to a citizen's right to have non-citizen parents live with her in the United States. *See Santos v. Lynch*, No. 1:15-cv-000979-SAB, 2016 WL 3549366, at *3 (E.D. Cal. June 29, 2016) ("As the denials of Mr. and Mrs. Santos's visa applications do not implicate Plaintiff's liberty interest in family life, there is no process due to her under the United States Constitution."); *Kodra v. Sec'y, Dep't of State*, 903 F. Supp. 2d 1323 (M.D. Fla. 2012) ("Plaintiffs argue that Leonard Kodra's due process are rights are implicated . . . and that Kodra has a right to live with his aging father and 'freedom of choice in his family life has been impinged.' Plaintiffs' arguments against the application of consular nonreviewability in this case are wholly unsupported."). Instead, Plaintiff is only entitled to a statutory right to submit a Form I-130 to commence the visa process for her parents. 8 U.S.C. § 1154 (a)(1)(A)(i). Defendants did not deny Plaintiff that right.

Further, Plaintiff has not provided facts to show that her parents' visa applications were, in fact, rejected. Even assuming *arguendo* that Plaintiff could raise a cognizable claim for the delay in approval of her parents' visas, Plaintiff cannot instigate a Section 1503(a) cause of action absent a "final administrative denial" of a right or privilege. 8 U.S.C. § 1503. No such final denial has taken place

in this case.³ For these reasons, the Court recommends dismissal of Plaintiff's Form I-130 cause of action for failure to state a claim.

### b. Plaintiff's Claims under the Administrative Procedure Act

Plaintiff's complaint states that, in addition to Section 1503(a), she seeks relief under the Administrative Procedure Act ("APA"). Dkt. No. 1 at 10. Her primary contention is that the State Department's failure to provide notice and an opportunity to be heard prior to revoking her passport constituted a deprivation of her rights under the APA.⁴ *Id.* at 10-11. Specifically, Plaintiff argues that the State Department "had actual and constructive knowledge" that "the long 'lists' of babies allegedly falsely registered by midwives . . . and the affidavits relating to those children signed by the midwives, are unreliable." Dkt. No. 1 at 8. If the State Department had allowed Plaintiff to raise these facts at a hearing, she argues, officials would have been "unable to find, by a preponderance of the evidence, that

---

³ "The Fifth Circuit has determined that courts may take judicial notice of governmental websites." *Hyder v. Quarterman*, No. C-07-291, 2007 WL 4300446, at *3 (S.D. Tex. Oct. 10, 2007) *adopted* 2007 WL 4300442 (S.D. Tex. Dec. 5, 2007). Judicial notice of public records does not warrant conversion of a Rule 12(b)(6) motion into a motion for summary judgment. *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011). Here, as Defendants suggest, a cross-reference of the State Department's public "Visa Status Check" website with the visa number for Plaintiff's father produces a message which reads: "Your Immigrant Visa case has been transferred to another U.S. Consular office. You should check back for your case status at a later date." U.S. DEP'T OF STATE, *Visa Status Check*, https://ceac.state.gov/ceacstattracker/status.aspx (last accessed Nov. 14, 2017).

⁴ Plaintiff, in her reply to the Motion to Dismiss, also asserts that she is entitled to relief under the APA for Defendants' alleged refusal to issue visas to her parents. Plaintiff's original complaint did not invoke the APA in connection with the visas, and Plaintiff may not use a reply brief to allege new causes of action. *Petty v. Portofino Council of Coowners, Inc.*, 702 F. Supp. 2d 721, 729 n.3 (S.D. Tex. 2010). Nevertheless, even if the APA had been invoked initially, Plaintiff has not pointed to a legal wrong which could be redressed by its provisions, since the only privilege guaranteed to a U.S. citizen in this context (the ability to file a Form I-130 petition for non-citizen relatives) was not denied her in a final agency action. *Villafranca v. Tillerson*, No. 1:16-cv-00077, 2017 WL 2735589, at *4 (S.D. Tex. June 26, 2017) ("[B]ecause there is no 'final agency action,' the Court lacks subject matter jurisdiction to hear Plaintiff's APA claim.").

Plaintiff was not born in Texas, as shown on her Texas birth certificate." *Id.* Plaintiff represents that this failure to provide notice and a hearing prior to revocation "deprived Plaintiff of her Due Process right to engage in international travel, and of her Fundamental Right to return to the U.S. following any such travel." *Id.* Defendants contend that Plaintiff's APA claim should be dismissed for lack of subject matter jurisdiction because Plaintiff has an adequate remedy available through Section 1503(a), and alternatively that Plaintiff has failed to state a claim under Rule 12(b)(6). Dkt. No. 10 at 14-16.

Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. In such circumstances, where the plaintiff is not seeking money damages, the APA acts as a waiver of the government's sovereign immunity, allowing plaintiffs to proceed in federal court in an effort to rectify agency action. *Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 260 (1999). But the APA only provides a path to recovery in situations "for which there is no other adequate remedy in a court." 5 U.S.C. § 704. "[T]he APA excludes from its waiver of sovereign immunity . . . claims for which an adequate remedy is available elsewhere[.]" *Lulac E. Park Place Trust v. U.S. Dept. of Hous. & Urban Dev.*, 32 F. Supp. 2d 418, 420 (W.D. Tex. 1998). "In other words, a plaintiff may sue under the APA only where there are no other judicial remedies available." *Cavazos v. Kerry*, No. 3:15-cv-0661-G, 2016 WL 4126142, at *4 (N.D. Tex. Aug. 3, 2016). Where a plaintiff has other adequate remedies which preclude

her from proceeding with a claim under the APA, dismissal under Rule 12(b)(1) is appropriate. *Trader Properties, LLC v. United States*, No. G-14-254, 2015 WL 1208983, at *1-2 (S.D. Tex. Mar. 16, 2015). "This determination appears to hinge on whether the alternative statutory remedies are 'adequate' to redress the injury alleged, although the alternative need not be 'more effective' than APA review." *Sanchez v. Clinton*, No. H-11-2084, 2012 WL 208565, at *4 (S.D. Tex. Jan. 24, 2012), *aff'd*, 648 Fed. Appx. 386 (5th Cir. 2015), *cert denied*, 137 S. Ct. 65 (2015).

Plaintiff's claim is barred by the express language of the APA. As discussed above, the APA makes clear that it is unavailable to a plaintiff who may seek an adequate remedy through an alternative statute. *Brooks v. Snow*, 313 F. Supp. 2d 654, 659 (S.D. Tex. 2004). Here, Defendants acknowledged that Plaintiff may proceed with a cause of action for her passport revocation under Section 1503(a). Dkt. No. 10 at 7. Plaintiff argues that the remedy available to her under Section 1503(a) is inadequate because a declaration of citizenship would not entitle her to injunctive relief to prevent the State Department from again revoking her passport. Dkt. No. 18 at 8-9. However, federal courts have consistently held that, in the passport revocation or denial context, a declaration of citizenship under Section 1503(a) is an adequate remedy which forecloses concurrent relief through the APA. *See, e.g.*, *Villarreal v. Horn*, 203 F. Supp. 3d 765, 773 (S.D. Tex. 2016) ("This Court and other courts have repeatedly dismissed APA claims challenging the denial of a passport application or a passport revocation on grounds that the holder is not a U.S. national[.]"); *Tavera v. Harley-Bell*, No. 09-cv-0299, 2010 WL 1308800, at *3

(S.D. Tex. Mar. 31, 2010) (8 U.S.C. § 1503(a) does indeed provide an adequate remedy to address Plaintiff's injuries such that review under the APA is precluded."); *Ballin v. Kerry*, No. 1:2-121, 2013 WL 12142364, at *2 (S.D. Tex. Mar. 29, 2013) ("Numerous federal courts have held that § 1503(a) provides an adequate remedy for the denial of an application for a passport based on the applicant's failure to establish citizenship."). Similarly here, the Court finds that Plaintiff has an adequate remedy for the revocation of her passport through Section 1503(a), and her APA claim should be dismissed for lack of subject matter jurisdiction.[5]

### c. Plaintiff's Claim against the United States and Request for Injunctive Relief

Because the APA is not applicable in this case, Plaintiff may only seek recovery under Section 1503(a), and specifically only in connection with the revocation of her passport. In addition to Secretary Tillerson and Commissioner Berryhill, Plaintiff names the United States of America as a defendant to this action. Dkt. No. 1 at 1. However, "[t]he plain language of [Section 1503(a)] authorizes suit only against the head of a department or agency." *Almaraz v. Tillerson, et al.*, No. 1:17-cv-00131, Dkt. No. 13 (S.D. Tex. Oct. 17, 2017). Courts in the Southern District of Texas have frequently dismissed the United States as a defendant in similar actions, citing the statute's express language which permits relief only against the department or agency head. *See, e.g., Resendenz v. Kerry, et*

---

[5] In seeking dismissal of the APA claim, Defendants invoke Rule 12(b)(1) and, alternatively, Rule 12(b)(6). Because the APA does not authorize judicial review where other adequate remedies are available, the Court joins other courts within the Southern District of Texas in finding Defendants' argument to be jurisdictional in nature and meriting dismissal under Rule 12(b)(1). *Villarreal*, 203 F. Supp.; *De la Garza Gutierrez v. Kerry, et al.*, No. 1:16-cv-00223 (S.D. Tex. Mar. 22, 2017).

*al.*, No. 7:16-cv-00689, Dkt. No. 11 (S.D. Tex. May 23, 2017), *Dorantes v. Tillerson, et al.*, No. 1:16-cv-00268, Dkt. No. 15 (S.D. Tex. Mar. 22, 2017). Further, the Court will presume that Plaintiff does not oppose the United States' dismissal, because Plaintiff did not respond to Defendants' arguments on this issue. *Sanchez*, 2012 WL 208565, at *4; *see also* S.D. TEX. LOCAL RULE 7.4 ("Failure to respond will be taken as a representation of no opposition."). For these reasons, the Court lacks subject matter jurisdiction to hear a claim against the United States under Section 1503(a), and the United States should be dismissed as a defendant.

The plain language of Section 1503(a) also does not permit injunctive relief. *Guajardo v. Kerry*, No. CV SA-13-CA-608 FB, 2014 WL 12538142, at *1 (W.D. Tex. May 2, 2014). As discussed previously, if Plaintiff succeeds in her claim, Plaintiff's remedy would lie in a declaration of her citizenship. *Almaraz*, Dkt. No. 13 at 3 ("[T]he injunctive relief that Plaintiff seeks under Section 1503(a) is denied, as said statute proves a precise and limited remedy—a declaratory judgment determining the status of her citizenship."). *Hizam v. Kerry*, 747 F.3d 102, 108 (2d Cir. 2014) ("In the district court's view, its order . . . 'barred the agency from re-opening its prior adjudication of Mr. Hizam's status or revoking his citizenship documents based on second thoughts.' But nothing in the language of Section 1503(a) allows the district court to provide plaintiff with such a remedy."). Therefore, Plaintiff's requests for injunctive relief against Secretary Tillerson and Commissioner Berryhill should similarly be dismissed.

## IV. Recommendation

For the reasons stated above, it is recommended that Defendants' Motion be **GRANTED**.[6]

## V. Notice to Parties

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

Signed on this 15th day of November, 2017.

_____
**Ignacio Torteya, III
United States Magistrate Judge**

---

[6] The Court concludes with the note that, while Defendants' motion is styled as a "Motion to Dismiss," it serves, in effect, as a partial motion to dismiss. Plaintiff's cause of action for a 1503(a) declaratory of citizenship on the basis of her passport revocation was not contested, and will survive Defendants' motion; therefore, the Court does not recommend a full dismissal of this action.